## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:16-cr-68 |
| | : | |
| vs. | : | Judge Timothy S. Black |
| | : | |
| VITO STRAMAGLIA, | : | |
| | : | |
| Defendant. | : | |

## ORDER DENYING DEFENDANT'S MOTION
## FOR COMPASSIONATE RELEASE

This criminal case is before the Court on Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. 31), and the parties' responsive memoranda (Docs. 32, 33).

## I.    BACKGROUND

On August 24, 2017, Defendant Vito Stramaglia appeared before this Court and entered pleas of guilty to a two-count Information, charging him with: tax evasion, in violation of 26 U.S.C. § 7201 (Count 1); and structuring transactions to evade reporting requirements, in violation of 31 U.S.C. § 5324(a)(3) and (d)(1) (Count 2).  (Docs. 1 & 7; Min. Entry, Aug. 24, 2017).  Defendant entered his plea pursuant to a Rule 11(c)(1)(B) agreement, which agreement included the parties' non-binding stipulations as to the Guideline computation and, further, included Defendant's agreement to pay his outstanding tax obligations, as ordered by the Court.  (Doc. 7).  The final Guideline computation and ultimate sentence remained entirely within the Court's discretion.  (*Id.*)

At the time of his plea hearing, Defendant admitted to the facts set forth in his Statement of Facts, in full.  (Doc. 7 at 13-20; Min. Entry, Aug. 24, 2017).  In short, Defendant admitted that, for at least a decade, beginning in 2006, he had earned tens of millions of dollars (at least $12 million between 2008 and 2013 alone), but had neither filed income tax returns nor paid over payroll taxes, as required.  (Doc. 7 at 13, ¶ 2; 15-16, ¶ 6; & 18, ¶ 8).  Defendant further admitted that he employed sophisticated means to actively evade his tax obligations—namely, by using various corporate entities and structuring financial transactions to conceal his earnings.  (*Id*. at 13-18).  And Defendant admitted to recruiting and using other individuals to assist him in evading taxes.  (*Id*. at 14-16, ¶ 6).  Finally, Defendant admitted that his conduct from 2008 to 2013 resulted in tax loss to the IRS between $1 million and $2.5 million.

Initially, Defendant's final PSR was due for disclosure to the Court by November 9, 2017.  (Doc. 10).  However, at the request of Defendant and the Probation Officer, this Court granted multiple extensions of both the PSR disclosure dates and the sentencing itself, in order to ensure the receipt of relevant records, accommodate Defendant's health, and—most notably—to allow Defendant to continue making substantial payments against his inevitable tax obligations to the IRS.[1]

---

[1] The Court found that, given the extraordinary amount Defendant owed to the IRS (roughly $2.3 million), and given the fact that Defendant was in the process of paying the money back, the repayment of money owed to the IRS far outweighed the need to proceed to sentencing immediately.  Thus, the Court agreed to "delay Defendant's sentencing, conditioned upon his continued payments in the amount pledged ($45,000/mo.)."  (Not. Order, Aug. 13, 2018).  The Court continued to monitor Defendant's repayments during this time and held status conferences with the parties, during which the Court also made clear that the significance of Defendant's repayment would not allow him to avoid a term of imprisonment, although Defendant's efforts to take responsibility post-conviction would be noted in the Court's sentencing considerations.

Defendant's PSR was ultimately completed on May 16, 2018 and later supplemented on November 9, 2023. (Docs. 19, 26). As stated in the PSR and also calculated by the Court, Defendant's offense conduct resulted in a Total Offense Level of 21, a Criminal History Category II, and a Guideline Range of 41 to 51 months imprisonment. (Doc. 19 at 36; Doc. 29 at 1).

On November 14, 2023, the case proceeded to sentencing, at which time the Court sentenced Defendant to a term of six months imprisonment, followed by three years of supervised release. (Doc. 19). The Court agreed to allow Defendant to self-surrender and, at Defendant's request, extended his reporting date of March 1, 2024. (Min. Entry, Nov. 14, 2023; Not. Order, Nov. 15, 2023).

On February 20, 2024, *i.e.*, 10 days *before* reporting to the BOP, Defendant sent a letter to the Warden of FMC Lexington (Defendant's facility of designation), requesting compassionate release. (Doc. 31 at 1; Doc. 31-1). On April 1, 2024, *i.e.*, one month after self-surrendering to serve his six-month sentence, having received no response from the Warden, Defendant filed the instant motion for compassionate release. (Doc. 31).

## II.    STANDARD OF REVIEW

"[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment," and "the court may not modify a term of imprisonment once it has been imposed," subject to limited exceptions. 18 U.S.C. § 3582(b), (c); *Dillon v. United States*, 560 U.S. 817, 824 (2010). One such exception permits the Court to reduce a term of imprisonment, either upon a motion brought by the Bureau of Prisons ("BOP"), or on the defendant's own motion, seeking compassionate release. *Id*. at § 3582(c)(1)(A)(i). A

3

defendant may file a motion for compassionate release with the Court after exhausting

the BOP's administrative process, or thirty days after the warden receives the defendant's

compassionate release request, whichever is earlier. *Id*. at § 3582(c)(1)(A).

To grant a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), the

Court must: **first**, find that "extraordinary and compelling reasons warrant [] reduction

[of the sentence]"; **second**, find that the reduction is "consistent with applicable policy

statements issued by the Sentencing Commission" (specifically, U.S.S.G. § 1B1.13); and

**third**, consider the applicable 18 U.S.C. § 3553(a) factors. *United States v. Elias*, 984

F.3d 516, 518 (6th Cir. 2021) (citing *United States v. Jones*, 980 F.3d 1098, 1101 (6th

Cir. 2020).

However, pursuant to Sixth Circuit precedent, the second step of the Court's three-

step § 3582(c)(1)(A) inquiry—*i.e.*, finding that the reduction is consistent with U.S.S.G.

§ 1B1.13—does **not** apply to motions brought by the *defendant*. *Jones*, 980 F.3d at 1109

(citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)); *Elias*, 984 F.3d at

519 (noting the Sixth Circuit's holding is consistent with the Second, Fourth, and Seventh

Circuits, as well as the majority of district courts).

"The district court has substantial discretion" in deciding a motion for

compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020)

("The statute says that the district court 'may' reduce a sentence if it finds the first two

requirements met; it does not say that the district court must do so").

Defendant bears the burden of showing that he is entitled to compassionate

release. *E.g.*, *United States v. Kannell*, No. 20-12635, 2021 WL 223485, at *1 (11th Cir.

4

Jan. 22, 2021) ("The movant bears the burden of proving entitlement to relief under section 3582"); *United States v. Melgarejo*, 830 F. App'x 776, 778 (7th Cir. 2020) ("[the defendant] did not meet his burden of demonstrating that his circumstances were extraordinary and compelling"); *cf. United States v. McClain*, 691 F.3d 774, 777 (6th Cir. 2012) (holding that the defendant bears the burden to show he is entitled to reduction of sentence under 18 U.S.C. § 3582(c)(2)).

### III.    ANALYSIS

Defendant moves this Court for an Order granting compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A).  Because Defendant, through counsel, has brought his own motion for compassionate release (as opposed to a motion brought by the BOP), the Court must undertake the first and third steps of the § 3582(c)(1)(A) inquiry. Accordingly, the Court will consider whether "extraordinary and compelling reasons" warrant a reduction in Defendant's sentence and, if so, will further consider whether such a reduction is warranted in light of the relevant section 3553(a) factors.

### A.  Extraordinary and Compelling Circumstances

First, the Court must find that "extraordinary and compelling reasons warrant [the sentencing] reduction."  18 U.S.C. § 3582(c)(1)(A)(i).  The statute does not define the term "extraordinary and compelling reasons," and Congress delegated the task to the United States Sentencing Commission.  *See Ruffin*, 978 F.3d at 1004.  However, "[i]n cases where incarcerated persons file motions for compassionate release, <u>federal judges … have full discretion to define 'extraordinary and compelling'</u> without consulting the policy statement § 1B1.13."  *Jones*, 980 F.3d at 1111 (emphasis added).

Here, Defendant moves this Court for an Order granting his compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), in order to allow him to care for his elderly mother. (Doc. 31). Defendant notes that his mother's health is failing and that "he is the only family caregiver …." (*Id*. at 1).[2] Defendant explains that, approximately two weeks before he self-surrendered to the BOP, he moved his mother into his home in Port St. Lucia, Florida, in order for him to "oversee[] her [24-hour] care," which care was and still is being provided by hospice nurses and "unrelated individuals" whom Defendant hired. (*Id*. at 4). Defendant further notes that while he has four siblings, they are "not available for one reason or another," thereby rendering Defendant the "only available caregiver" for his mother. (*Id*. at 4-5).

To start, even accepting as true the assertion that Defendant's siblings are unable or unwilling to care for their mother, "[a]n inmate's need or desire to care for an aging parent does not constitute an extraordinary and compelling reason for release." *United States v. Apostelos*, No. 3:15-CR-403 (1), 2023 WL 2376972, at *6 (S.D. Ohio Mar. 6, 2023) (collecting cases).

More to the point, however, and to state the obvious, Defendant is **not** his mother's "only available caregiver." By Defendant's own admission, his mother is residing in the comfort of Defendant's own home and is receiving 24-hour care by nursing professionals, including individuals Defendant personally hired. (Doc. 31 at 4). Moreover, Defendant acknowledges that, if he were present, his role would be

---

[2] Defendant provides his mother's medical records in support of his argument. (Docs. 31-1 & 31-2).

"overseeing" the nursing staff and providing comfort to his ailing mother. (*Id*. at 4-5).[3]

And while the Court understands and empathizes with the emotional draw of wanting to

be with a sick and elderly parent, Defendant's absence is the result of his own conduct

and, further, does not present an extraordinary set of circumstances. Indeed, many

inmates have ailing family members and elderly parents. In fact, the only circumstances

that arguably differentiate Defendant from other inmates are: (1) Defendant's six-month

sentence is mercifully short in comparison to most, and therefore his absence will not be

for long; and (2) Defendant is fortunate enough to have the financial means to provide a

familiar home and quality, around-the-clock care for his mother, in his absence.

It also bears noting that, at the time of sentencing, the Court was well-aware that

Defendant financially supported and otherwise saw to the needs of his elderly, ailing

mother. And "facts that existed at the time of sentencing do not constitute an

extraordinary and compelling reason warranting a subsequent sentence reduction," unless

Defendant offers "evidence as to how these conditions have worsened since his

sentencing." *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022). Here, at the

time of sentencing (just four months prior to the filing of Defendant's motion),

Defendant's mother was 95 years old and residing in an assisted living facility that

Defendant partially paid for; she was in poor health and had recently broken her wrist;

---

[3] It bears noting that Defendant is not a health care professional and that he himself suffers from numerous health complications that would logically render him effectively unable to provide significant care to anyone else. Specifically, Defendant's medical records at the time of sentencing note that Defendant suffers from, *inter alia*, pulmonary sarcoidosis, diabetes, foot ulcers, kidney disease, chronic fatigue, short term memory loss, and peripheral neuropathy that has left him with "virtually no sensation from the waist down…." (Doc. 26 at 11).

and Defendant expressed concern that he would be unable to care for her while

incarcerated.  (Doc. 30 at 46-50).  Indeed, the Court had the following exchange with

Defendant regarding his mother's care:

> **DEFENDANT**:  "The worst thing about this is that I got my
> mother that I've got to worry about, that's the worst thing that's
> bothering me."
>
> **THE COURT**:  "Might have thought about that earlier."

(*Id*. at 48:23-49:1).

In other words, the Court considered the fact that Defendant cares for his mother

and found it an uncompelling basis upon which to impose a non-custodial sentence.

Nevertheless, the Court accounted for these circumstances, in a manner and to the extent

appropriate, in the Court's consideration of Defendant's § 3553(a) factors.  And while

circumstances may have changed, such that Defendant's mother is now residing in his

home rather than in an assisted living facility and, given her age, her health issues may

have and inevitably will continue to become more complicated over time, none of these

changes are evidence of worsening circumstances that were unforeseeable or

unaccounted for at the time the Court imposed its sentence.

In short, the need to care for an elderly parent is common among incarcerated

individuals and, thus, does not present an extraordinary or compelling basis for

compassionate release.  And here, in particular, Defendant's mother is receiving

professional care, even in his absence.  Moreover, this Court already considered and

accounted for Defendant's desire to care for his mother at the time it imposed a custodial

sentence of six months.  Nothing Defendant presents today shows a worsened or

unaccounted for change in circumstances, nor do the circumstances warrant the Court's

reconsideration of its original determination.  Thus, the law in this Circuit forecloses

Defendant's early release.

### B.  18 U.S.C. § 3553(a) Factors

Having found that no "extraordinary and compelling reasons" exist to warrant

compassionate release, the Court may deny the motion on that finding alone.  *See Elias*,

984 F.3d at 519 ("[D]istrict courts may deny compassionate-release motions when any of

the [required] prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address

the others") (citing *Jones*, 980 F.3d at 1108; *Ruffin*, 978 F.3d at 1006).  However, even

assuming *arguendo* that "extraordinary and compelling reasons" existed, the Court

nevertheless finds that compassionate release is unwarranted based upon its consideration

of all applicable § 3553(a) factors.

In short, at the time of sentencing, this Court, upon consideration of the relevant

18 U.S.C. § 3553(a) factors, varied downward significantly and sentenced Defendant to a

term of six months imprisonment, *i.e.*, 35 months below the low-end of the Guideline

range.  To date, Defendant has served just over two months of his six month sentence.

With regard to the § 3553(a) factors, Defendant reiterates the facts that this Court

already took into account when imposing the sentence in the first instance.  However,

Defendant now argues that the time he has spent incarcerated thus far is sufficient and

that "[t]he purpose of the sentence has largely been accomplished."  (Doc. 31 at 5-10;

Doc. 33 at 3).  The Court is unpersuaded.  For purposes of Defendant's motion, this Court

has again considered the applicable 18 U.S.C. § 3553(a) factors and, having done so,

finds that the imposed sentence was and still is appropriate.  Indeed, the Court finds that

the imposed sentence of six months imprisonment is sufficient but not greater than

necessary, and further finds that granting compassionate release would fail to fully

address the purposes of sentencing.

## IV.    CONCLUSION

Based upon the foregoing, Defendant's motion for compassionate release (Doc.

31) is **DENIED**.

**IT IS SO ORDERED.**

Date:  5/10/2024

Timothy S. Black
United States District Judge